GOLDWYN LOAN AND INVESTMENT CORPORATION, Plaintiff, *v.* HARRY WEINFELD and Another, Defendants.

Municipal Court of New York, Borough of Manhattan, Fourth District, June 30, 1932.

*Mandelbaum & Weinberg,* for the plaintiff.

*Benjamin & Sholes,* for the defendants.

LEWIS, DAVID C., J. The plaintiff is a corporation organized under the Banking Laws of the State of New York. It brings this

action against the defendants to recover upon a promissory note executed by the defendants as makers, secured by an installment investment certificate subscribed for by the defendants and assigned to the plaintiff as collateral for the note.

Apparently it was stipulated that in the event of default in any of the payments on the certificate, the full amount of the note would become due. The defendants defaulted, and the action is now instituted to recover the unpaid balance of eighty-two dollars and fifty cents.

The defendants do not deny the claims advanced by the plaintiff, but by way of a complete and separate defense allege that on or about September 28, 1929, the defendants purchased stock of the plaintiff corporation from it pursuant to an oral understanding and agreement that if the defendants would purchase such stock, they could get their money back at any time by returning the said stock to the plaintiff corporation; that thereafter the defendants, pursuant to the agreement, tendered the stock to the plaintiff corporation and demanded their money in return, which was refused by the plaintiff.

Neither the plaintiff nor the defendants rely upon any controverted issue of fact.

The plaintiff insists that as a matter of law any agreement of the plaintiff to repurchase its stock would be illegal and unenforcible; and there being no dispute as to the plaintiff's claim on the note the plaintiff should prevail.

The defendants practically concede that unless the legality of the alleged contract to repurchase the stock can be sustained (either by way of counterclaim or setoff as a defense), the plaintiff is entitled to judgment.

The illegality of any undertaking by a corporation to repurchase the shares of its own stock out of its capital as distinguished from surplus or profits has been the subject of both judicial and legislative declarations, and hence we find that there cannot be any binding contract to carry out such a prohibited purpose. When it comes to a banking or investment corporation the restrictions are more.

" The defendant Schwartz it is said was bound to sell and convey his stock at book value at the end of his employment. How about the corporation? What were its obligations? If it had no surplus, it could not legally perform the purported contract; it could not make the purchase. Under our statute it would have been illegal; without our statute it would have been unenforceable as against the corporation, if there were creditors and no surplus. (*Hoover Steel Ball Co.* v. *Schaefer Ball Bearing Co.* [90 N. J. Eq. 164].) Whichever

way we look at it there were certain conditions under which the corporation would be unable to perform its promise to purchase the stock and under which the courts would declare its contract so to do illegal. If, therefore, we consider the contract in question, as we must, one dependent upon mutual promises for the consideration, we have the defendant promising that at a certain time he will sell at a certain price and the plaintiff promising to buy. The promise is binding upon the defendant but may or may not be binding upon the plaintiff. It is as if the plaintiff had a choice to buy or not as it pleased. By ' binding ' I mean that the corporation could execute the contract by purchasing the stock out of its surplus, but could not, without violating the law, purchase its stock when it had no surplus. Under these circumstances, we have a contract not mutually binding, and, therefore, lacking in the consideration. (*Schlegel Mfg. Co.* v. *Cooper's Glue Factory*, 231 N. Y. 459, 462.) ' The principle is ordinarily stated in the axiom that in a bilateral agreement both promises must be binding or neither is binding.' (Wil iston on Contracts, sec. 103-e.)

" *Richards* v. *Wiener Co.* (207 N. Y. 59) contains some statements in the opinion which would be very apt to lead one to take the other view and to hold that this contract was good unless it appeared that the corporation were insolvent. The statements to this effect in the opinion are not necessary for the decision of the case as the court considered the contract an option to purchase and a contract of employment. (See *Matter of Tichenor-Grand Co.*, 203 Fed. Rep. 720.) If in the case before us the defendant had been given employment and the employment had furnished the price or the consideration for his agreement to return the stock at the end of his employment, we would then have a contract resting not on a mutuality of promises, but upon a consideration given and paid in part by the corporation. (*Hoover Steel Ball Co.* v. *Schaefer Ball Bearing Co.*, *supra* [last paragraph, p. 171]; vol. 1, Williston on Contracts, sec. 13; *Strait* v. *Northwestern Steel & Iron Works*, 148 Wis. 254.) The contract then would be good unless it appeared that the stock would be purchased out of the capital. This would be a matter of defense. The situation here, however, is as above stated; the contract for its consideration rests upon mutual promises. One of the promises may or may not be good, the same as if a discretion were left to one of the parties to perform or not perform. Under such circumstances there is no consideration and the contract cannot be enforced." (*Topken, Loring & Schwartz, Inc.*, v. *Schwartz*, 249 N. Y. 206, 210.)

" Unless both parties to a contract are bound, so that either

can sue the other for a breach, neither is bound. (*Grossman* v. *Schenker*, 206 N. Y. 466; *Levin* v. *Dietz*, 194 N. Y. 376; *Chicago & Gt. E. Ry. Co.* v. *Dane*, 43 N. Y. 240; *Hurd* v. *Gill*, 45 N. Y. 341; *Commercial Wood & Cement Co.* v. *Northampton Portland Cement Co.*, 115 App. Div. 388; *Jackson* v. *Alpha Portland Cement Co.*, 122 App. Div. 345; *Crane* v. *Crane & Co.*, 105 Fed. Rep. 869; Williston on Contracts, sec. 104.) " (*Schlegel Mfg. Co.* v. *Cooper's Glue Factory*, 231 N. Y. 459, at p. 462.)

These principles have recently received the unanimous sanction of the Court of Appeals.

" The entire contract is not illegal. That part providing for the sale of stock to the plaintiffs is valid and may be enforced. This proposition appears to have been passed upon in *Hoover Steel Ball Co.* v. *Schaefer Ball Bearings Co.* (90 N. J. Eq. 164); *Atwater* v. *Stromberg* (75 Minn. 277); *Knight* v. *Jeff Davis Banking Co.* (31 Ga. App. 440; 120 S. E. 696); *Jackman* v. *Continental National Bank* (16 F. [2d] 728.) " (*Norwalk* v. *Marcus*, 235 App. Div. 211.)

The defendants' counsel freely concedes that " any agreement by a bank or investment company to purchase its own stock is unenforcible (except to prevent loss on a debt previously contracted) and that the defendants could not have maintained an independent action thereon to compel the plaintiff to accept the stock and to refund the purchase price." (See defendants' brief, Point I.)

Counsel for the defendants would distinguish the case at bar and save the alleged agreement to repurchase from this fatal indictment on the theory that in the instant case the defendants are not initiating any proceeding to secure affirmative redress but are simply seeking the complete performance of their contract as a matter of defense against the claim for the payment of the full consideration by them.

In this way the defendants would rebut and overrule legal precedents with equitable principles, characterizing their claim as an equitable setoff or defense.

The defendants protest against the rule that allows the corporation the full enjoyment of its contract and at the same time absolves it from full and due performance of its agreed obligations.

The defendants insist that the protection of creditors and depositors does not necessitate depriving an alleged credulous individual from setting up as a defense the fact that he was induced to buy the stock by the promise of the corporation to repurchase it at any time.

As a matter of law, the court must be guided, not by the strength of the defendants' argument, but by the weight of judicial authority. The policy of the law is plain and was well established at the time

of the alleged contract. The parties are presumed to enter upon their legal undertakings cognizant of the law and its restrictions, and no court can underwrite, no less presume, a contract involving illegal features.

Regardless, therefore, of the illegal elements in the contract, the court will not condemn the entire contract.

Judgment for the plaintiff. Ten days' stay.