Esta Sidrane, Appellant, *v.* F. D. R. Realty Corporation, Respondent, et al., Defendants.

Submitted February 19, 1947; decided May 22, 1947.

*Leonard Acker* and *Emanuel Thebner* for appellant. I: The letter of October 18, 1938, was an offer looking to a unilateral contract, and could be withdrawn at any time until acceptance by full performance of all acts called for, and the offer was so withdrawn on February 21, 1945. (*Persky* v. *Bank of America National Assn.*, 261 N. Y. 212; *Barber-Greene Co.* v. *Dollard, Inc.*, 239 App. Div. 655, 267 N. Y. 545; *Machinery Utilities Co., Inc.*, v. *Fry*, 224 App. Div. 392; *Evans* v. *2168 Broadway Corp.*, 281 N. Y. 34; *Agawam Bank* v. *Strever*, 18 N. Y. 502; *Picker* v. *Fitzelle*, 60 App. Div. 451; *Petterson* v. *Pattberg*, 248 N. Y. 86; *M. V. T. Corporation* v. *Mount Vernon Lodge No. 842*, 263 App. Div. 849; *Quincy & Co.* v. *Cities Service Co.*, 156 Misc. 83, 253 App. Div. 719; *Farago* v. *Burke*, 262 N. Y. 229; *Mechanics National Bank* v. *Jones*, 76 App. Div. 534, 175 N. Y. 518; *Ferlazzo* v. *Riley*, 278 N. Y. 289.) II. Defendant defaulted in payment of taxes and so failed to comply with the bank's offer. (*Delaware Trust Co.* v. *Calm*, 195 N. Y. 231; *Bailly* v. *Betti*, 241 N. Y. 22; *Tobias* v. *Lissberger*, 105 N. Y. 404.; *Doxey* v. *Coates, Bennett & Reidenbach, Inc.*, 181 App. Div. 207.) III. There is no basis for any estoppel against the bank. (*Matter of Guernsey Breeders Co-Op.* v. *Noyes*, 260 App. Div. 240, 284 N. Y. 197; *Matter of Wadhams*, 249 App. Div. 271; *Pagel, Horton & Co., Inc.*, v. *Harmon Paper Co.*, 236 App. Div. 47.) IV. The bank's voluntary acceptance of less than that to which it was entitled on some installments of interest did not fix a new rate of interest which controlled future payments. (*Guggenheimer* v. *Geiszler*, 81 N. Y. 293; *Chelsea Exchange Bank* v. *Warner*, 202 App. Div. 499; *Title Guarantee & Trust Co.* v. *2846 Briggs Avenue*, 283 N. Y. 512; *McKenzie* v. *Harrison*, 120 N. Y. 260; *Auswin Realty Corp.* v. *Kirschbaum*, 270 App. Div. 334.)

*Solomon Millendorf* for respondent. Plaintiff failed to establish the allegation of the complaint that defendant was in default. (*Moran* v. *Standard Oil Co.*, 211 N. Y. 187; *Ehren-*

*worth* v. *Stuhmer & Co.,* 229 N. Y. 210; *Grossman* v. *Schenker,* 206 N. Y. 466; *White* v. *Hoyt,* 73 N. Y. 505; *Gillet* v. *Bank of America,* 160 N. Y. 549; *Simon* v. *Etgen,* 213 N. Y. 589; *Brighton Operating Corp.* v. *Morrison,* 291 N. Y. 6; *Gorschen* v. *Ivan-Reen Realty Corp.,* 293 N. Y. 794.)

THACHER, J. By a series of amendments to the Civil Practice Act beginning August 26, 1933 (L. 1933, ch. 793), foreclosure of mortgages for principal defaults was suspended during the emergency. These laws did not impair the mortgagee's right to foreclose for default in the payment of interest. In this foreclosure action the alleged default upon which foreclosure was sought was nonpayment of interest. The owner of the property interposed a separate defense predicated upon a letter written to it by Brooklyn Trust Company, plaintiff's assignor, on October 18, 1938, reading as follows:

" Gentlemen:

Enclosed herewith please find your receipt for the August 1, 1938 principal installment of $175.00 in reduction of the first mortgage covering your property at 4319 13th Avenue, Brooklyn, New York.

According to our agreement we shall expect to receive the sum of $275.00 on October 30th, 1938 representing the balance of the August 1, 1938 interest. Also, by the end of this month the second half 1938 taxes are to be paid and the receipted bill exhibited. During the month of November the quarterly interest and the November quarterly principal installments are also to be paid.

When these terms have been met, the rate of interest will be changed on our records to 4% per annum effective as of August 2nd, 1938. The reduced rate of interest will continue provided the regular $175.00 quarterly installments on the principal are maintained and further provided interest and taxes are paid promptly when due.

Very truly yours,

JOHN R. MOHR

Vice-President ".

It was alleged that the defendant paid the installments of principal and interest at 4% up to February 1, 1945, and thereafter tendered to the plaintiff on April 30, 1945, $175 on account of principal and mortgage interest at 4% and made a similar

tender on July 31, 1945, but that the plaintiff refused to accept these tenders and returned the remittances to the defendant. These allegations were established upon the trial, but it also appeared that before the tenders were made the Brooklyn Trust Company on February 21, 1945, had written the Realty Corporation as follows:

" Gentlemen:

The present arrangement for payment of interest at 4% and $700 per year amortization are hereby cancelled, and we advise that effective from February 1st, 1945 the interest on the mortgage affecting the captioned premises will be payable at the rate of 6% per annum.

Amortization under Section 1077G of the Civil Practice Act — Laws of the State of New York, will be payable at the rate of 2% per annum quarterly, beginning April 1st, 1945.

You will be billed accordingly."

By chapter 782 of the Laws of 1941, which became a law on April 27, 1941, amortization at the rate of 1%, payable October 1, 1942, and quarterly thereafter, was permitted under the mortgage moratorium statutes, and by chapter 562 of the Laws of 1944 the permissible rate of amortization was increased to 2% after June 30, 1944, which has since been raised to 3% (Civ. Prac. Act, § 1077-g).

Presumably, in writing its letter of February 21, 1945, the mortgagee considered it fair and equitable to ask only what the law allowed on this defaulted mortgage insofar as future payments were concerned, namely interest at 6% and amortization at 2%, but was met with the claim that its leniency in the past had ripened into a binding contract permanently to reduce the interest rate from 6% to 4%.

At Special Term it was held that the bank's conditional promise to reduce the interest rate " provided the regular $175.00 quarterly installments on the principal are maintained and further provided interest and taxes are paid promptly when due " was in effect a continuing offer or series of offers which were to be successively accepted and could be revoked at any time before acceptance. This determination was reversed in the Appellate Division, where it was held that the offer of the bank to accept a reduced rate of interest became a binding contract which the

mortgagee could not cancel so long as the owner paid interest and amortization at the reduced rates.

The letter of October 18, 1938, was never acknowledged by the Realty Corporation nor did the Realty Corporation bind itself by any mutual promise at any time. In effect the bank stated its willingness to accept for a time 2% on the face of the mortgage as amortization instead of as interest, interest at 6% having been payable under the terms of the mortgage. This was merely a favor to the debtor. The fact that no time was specified for its continuance confirms mutual understanding that it could be withdrawn at any time the mortgagee chose to withdraw it. Under these circumstances there was no mutuality of obligation which committed the Realty Corporation in any way. (*Smith* v. *Diem*, 223 App. Div. 572, affd. 249 N. Y. 590; 1 Restatement, Contracts, §§ 44, 31; 1 Williston on Contracts, § 58.) A different phase of the same problem involving a claim that the maturity of a mortgage had been extended by letters written by a mortgagee was presented in *Dry Dock Sav. Inst.* v. *103 E. 75th St. Apartments, Inc.* (296 N. Y. 280).

Conclusion follows that the separate defense interposed to this action of foreclosure was bad as matter of law.

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FULD, JJ., concur.

Judgment accordingly.